ABRAHAM STEINER and JACOB STEINER

*v.*

LOUIS PETERMAN and RACHEL, his wife.

[Submitted March 7th, 1906.   Decided March 11th, 1906.]

The reservation in the deed of property, No. 297 K. street: "The said parties of the first part hereby reserve the right to connect wash lines from the yard of the property at No. 299 K. street, now owned by them, with the yard of the property hereby conveyed," is an easement in favor of the actual tenants and occupants of No. 299 to use wash lines extended, as at the time of the conveyance, from said property to a pole on No. 297.

---

On order to show cause why an injunction should not issue. Heard on bill and affidavits annexed, and on answering affidavits.

*Mr. Leo Stein,* for the complainants.

*Mr. Samuel F. Leber,* for the defendants.

PITNEY, V. C.

The complainants and the defendants are the owners, respectively, of adjoining premises in the city of Newark, and the complainants claim the right for the tenants and occupants of their premises to an easement over the adjoining tenement of the defendants of stretching clothes lines across the lands of the defendants and hanging and drying laundried clothing thereon.

The circumstances are these:

In the year 1892 the complainants were the owners, as tenants in common, of a house and lot known as No. 299 West Kinney street, on the corner of Boyd street, being twenty-five feet front on West Kinney street and one hundred feet deep on Boyd street.

Later on in the same year of 1892 Steiner became the owner of the adjoining lot facing on West Kinney street, known as No. 297, and having the same dimensions, namely, twenty-five feet front by one hundred feet deep.

On the corner lot there stood or was erected shortly after the acquisition of the title above mentioned the following buildings: On the front part of the corner lot a four-story frame tenement-house, twenty-five feet wide and about fifty-five feet deep; on the rear of the lot, and covering about twenty feet of its width, was a three-story tenement-house, reaching within a few feet of the front lot, leaving a small yard between the two buildings and a small passageway between the rear building of the corner lot and the line of the adjoining lot. At that point the lots were divided by a low fence.

Upon the adjoining lot, No. 297, was a two-and-one-half-story house, about forty feet deep, leaving about sixty feet of the rear of the lot open.

For the convenience of the tenants occupying these several buildings a large wash line pole was erected in the rear of lot 297, and as far away as practicable from lot 299, leaving, however, a passageway between it and the farther side of the lot, as appears by the map hereto annexed.

The several families occupying these premises (they were used as ordinary tenement-houses and rented by the month) were in the habit of stretching their clothes drying lines from

the windows of their several tenements across the open space on lot 297, and attaching them by pulleys to the pole above mentioned and using the lines so stretched for drying their clothing.

This state of things continued until the year 1901, a period of nearly nine years.

On the 29th of March of that year the complainant Steiner, together with his wife, conveyed No. 297 West Kinney street to one Barnett Super, by an ordinary deed of conveyance, which was immediately afterwards duly recorded, and which contained a reservation in the following words:

> "The said parties of the first part hereby reserve the right to connect wash lines from the yard of the property at No. 299 West Kinney street, now owned by them, with the yard of the property hereby conveyed."

Subsequently, in December of 1901, Super and his wife conveyed 297 West Kinney street to Jacob Finkelstein by a deed of conveyance which states that it is made subject to the same conditions mentioned in the deed from Steiner to Super.

Later on, in January, 1905, Finkelstein conveyed the premises 297 West Kinney street to Louis Peterman, the defendant herein, by a deed which makes no mention of the reservation in question.

Peterman swears that through failure to examine the title to the premises he had no actual notice of the reservation.

Shortly before the filing of the bill Peterman and his wife, being annoyed by the great extent to which the privilege so reserved was used, took means to abridge it, and, apparently, to confine it within what they thought and claim was a reasonable use.

They built a vertical addition to the fence dividing the two lots, whereby they made it difficult and impracticable, if not impossible, for the tenants of 299 to cross over and have access to the rear of 297 to readjust or reaffix the clothes line, if necessary, and also to recover any article which might drop from the lines to the ground.

They further erected a high wire fence diagonally across their lot, which will and does, unless broken down, prevent the ten-

ants of 299 from reaching the base of the pole. They also displaced several of the wash lines connected with 299 and forbade, with threats of violence, the tenants of 299 to enter upon 297. Whereupon complainants filed their bill praying for relief.

The situation of the premises and of the wash pole and obstructions are shown on the diagram annexed to the bill and hereto annexed on page 108.

Counsel for defendants, in his argument, took two principal grounds.

*First,* that the reservation in question did not reserve or create an easement proper.

He argued that there was no such easement known to the law as an easement of stringing clothes lines across one piece of land for the benefit of another piece of land.

And *second,* that the reservation here was merely a license to the complainants individually, for their personal benefit, which was not transferable by them to their tenants, and that as the affidavits show that neither of the complainants occupied the premises in person they could have no relief.

As to the first point, I find in the fourth edition of Gale's valuable treatise on easements (*Gale Easem.* (*Gibbons'* ed., *1868*) *20, 21*), a list of examples in England of affirmative and negative easements, and among them (at *p. 21*) is "right to hang clothes on lines passing over neighboring soil," supported by the case of *Grewell* v. *Towler, 3 Barn. & Ad. 735.*

That was a case of special pleading, in which the very right was set up in a pleading, and the jury found that the right existed, but not so broadly as set out in the pleading. Counsel argued that it was sufficiently broad to cover the trespass complained of, and that the pleader should be permitted to amend. The court at bar, after hearing counsel, held that while counsel's contention was probably right, yet they would order a nonsuit and let the plaintiff begin again.

The validity of such an easement was not disputed.

That case, like the case in our own courts of *Lee* v. *Hagerty, 45 N. J. Eq. (18 Stew.) 1, 255; 54 N. J. Law (25 Vr.) 580; 48 N. J. Eq. (3 Dick.) 98; 50 N. J. Eq. (5 Dick.) 464,* shows

the great convenience and propriety of having the rights of parties in such cases settled and distinctly defined in advance, thereby saving the necessity and costs of doing some act to provoke an action at law. In *Hagerty* v. *Lee,* I have never been able to perceive why the same court, which ultimately, in *54 N. J. Law,* decided the rights of the owner of the dominant tenement, might not have as well decided it when it was before it in *45 N. J. Eq.*

In this case the question whether the right here in question is an easement, as distinguished from a mere license, depends on the language of the reservation, and that seems plain enough. The right is to connect wash lines from the yard of 299 with the yard of 297. It is a right from a given place to a given place, and mentions no individual whatever. Thus, it seems to me, it is as far as possible from a personal privilege or license, and, if anything, it is a reservation in favor of the actual tenants and occupants of 299. True, it does not use that language as well as it might. It need hardly be said that a conveyancer of very ordinary capacity would have used the language "reserve to the owners and occupants for the time being of No. 299 West Kinney street," and the only question that I can perceive that remains in the case is whether that language is to be supplied by implication. The familiar rule in construing all written instruments is to so construe them that they will mean something and accomplish some office, and not be wholly nugatory —or, as the maxim expresses it, *ut res magis valeat quam pereat*—and that such meaning shall be given to the instrument as may carry out and effectuate the intention of the parties to the fullest extent. *Broom's Legal Max. 540.*

Now, the language here used implies that some person or persons should make use of the wash lines, and there can be no doubt that the intention of the parties was that those persons should be the owner and the occupants of the complainants' premises.

Then, in construing this clause, we must take into consideration the physical situation at the time of the conveyance by the complainant to Super when the reservation was made. As

to this the affidavits show that the pole on which these lines were attached was already in existence and the lines attached thereto and in use—all, of course, being within plain sight of Super, the grantee.

Now, I take it that in seeking for the intention of the parties in this language in connection, as we may, with the then condition of affairs, there can be no difficulty in arriving at the conclusion that the intention of the parties was to reserve to the complainants, by their tenants and occupants of No. 299, the right to connect and use wash lines in the manner then being used and connected. The affidavits show, and it is common knowledge, that the various lines were attached to the pole by pulleys and hooks, so that the clothes could be hung on the line in the yard or tenement of 299 and pulled out over the yard of 297 by pulling on the other end of the line, and then, when dried, be regained by their owners by reversing and retracing the course of the lines. All this required, ordinarily, no entrance by the foot upon the lot of 297 except to recover an article of clothing which might accidentally become detached, or to re-arrange a disordered or replace a broken line. I say this, not intending here and now, on *ex parte* affidavits, to lay down any final rule or special limit of use of these wash lines, but simply to indicate the practicability of defining reasonable limits to the use of this easement.

For these reasons, I am of the opinion that the clause in question reserved to the complainants an easement in the nature indicated for the benefit of their property at No. 299 West Kinney street, to be enjoyed by the actual owners and occupants thereof. Since the decision of the court of errors and appeals in *Lee* v. *Hagerty,* I cannot conceive that there is the least doubt as to complainants' right.

Of course, it is impossible for the defendant to escape the burden of this easement upon the ground of his failure to discover it in his chain of title, and his counsel did not make any such claim.

The easement may be a serious burden upon the defendant's property, resulting in a serious depreciation in its value, but

the presumption of law and fact is that that matter was taken into consideration between his predecessor in title, Super, and the complainant Steiner, when they bargained for the conveyance of the defendant's property, and that a much lower price was paid and accepted therefor than would have been so paid and accepted if no burden had been cast upon it.

The affidavits of the defendant indicate that the immediate cause of his adopting obstructive measures was the annoyance which he and his family suffered from the lower or first story line of wash lines. The assertion is that they hung so low as to render it inconvenient and impracticable for him and his family to pass to and fro in the back yard. I find nothing in the affidavits to show precisely how high the supporting pole is or how far distant from the ground the lowest line is attached. Nor can I infer from the affidavits how far it is practicable to so arrange the lines and tighten them that they will not droop, under the weight of the wet clothes, so low as to obstruct pedestrians. I think they should be so arranged and used as to interfere as little as practicable with the use by the defendant and his family and tenants in the back yard.

I will advise an order upon hearing counsel.

As in *Lee* v. *Hagerty,* there is no occasion at this time to determine whether the easement will be determined by the death of Steiner, since he is still living. I will, however, venture the remark that I am unable to perceive how the hard and fast rule that the word "heirs" is necessary in any kind of a grant to create an estate of inheritance has any logical application to a reservation where the estate out of which the reservation is made is already a fee-simple.